1

2

3

4

5                                    **NOT FOR CITATION**

6                        IN THE UNITED STATES DISTRICT COURT

7

8                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    JANET ZHANG,

10          Plaintiff,                              No. C 09-05921 JSW

11    v.                                            **ORDER GRANTING MOTION**
                                                    **FOR SUMMARY JUDGMENT**
12   WALGREEN CO.,

13          Defendant.
     _____/

14

15                                    **INTRODUCTION**

16          Now before the Court for consideration is the Motion for Summary Judgment filed by

17   Defendant Walgreen Co. ("Walgreens").  The Court has considered the parties' papers, relevant

18   legal authority, the record in this case, and has had the benefit of oral argument.  The Court

19   HEREBY GRANTS Walgreens' motion.

20                                    **BACKGROUND**

21          The following facts are undisputed, unless otherwise noted.  In June 2000, Walgreens

22   hired Plaintiff Janet Zhang ("Ms. Zhang") as a staff pharmacist. (Declaration of Linda

23   DeFronzo ("DeFronzo Decl."), ¶ 3, Exhibit A; Declaration of Brian Crone ("Crone Decl."), Ex.

24   A (Deposition of Janet Zhang ("Zhang Depo.") at 81:18-82:4)[1]; Docket No. 46-1 (Declaration

25   of Janet Zhang ("Zhang Decl."), ¶ 1).)[2]  Between 2000 and 2005, Ms. Zhang worked for

26   _____

27          [1]      Unless otherwise noted, all citations to Ms. Zhang's deposition are from the
     excerpts attached to the Crone Declaration.

28          [2]      Walgreens objects to the majority of Ms. Zhang's declaration.  (*See* Docket
     No. 47.)  To the extent the Court has relied on Ms. Zhang's declaration to resolve this
     motion, it shall set forth its rulings on those specific paragraphs of the declaration on which it
     has relief.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    Walgreens on a full-time basis.  However, in 2005, her husband had to relocate to China for

2    work, and Ms. Zhang requested a leave of absence to accompany him.  (Zhang Decl., ¶ 3;

3    Zhang Depo., at 70:3-15, 74:9-13.)

4         Walgreens has a personal leave of absence policy (the "Policy").[3]  (DeFronzo Decl., ¶ 5,

5    Ex. B; Declaration of Tanya Tambling ("Tambling Decl."), ¶ 3, Ex. B.)  Pursuant to the terms

6    of the Policy, an employee on personal leave is not considered an "active" employee.  In

7    addition, pursuant to the Policy, Walgreens does not guarantee that an employee will be

8    reinstated to his or her former position, a fact that Ms. Zhang understood.  (Zhang Depo. at

9    80:2-81:14.)

10        Walgreens granted Ms. Zhang's request for personal leave in 2005.  (Zhang Depo. at

11   77:9.)  Between 2005 and 2008, Ms. Zhang requested, and Walgreens granted, additional

12   personal leaves of absence to return to China.  (Zhang Decl., Ex. 3; DeFronzo Decl., ¶¶ 6-7.)

13   During this time, Ms. Zhang typically returned to work for Walgreens during the summer

14   months, and she then would return to China for the remainder of the year.  (*See, e.g.,* DeFronzo

15   Decl., ¶ 7; Declaration of Hilda Chung ("Chung Decl."), ¶¶ 5-6; Zhang Depo. at 82:16-20,

16   84:20-23; 86:7-87:15, 91:21-92:3; Crone Decl., Exs. C-D.)

17        On May 15, 2009, Ms. Zhang sent the following email to her District Pharmacy

18   Supervisor, Hilda Chung ("Ms. Chung"), among others:

19        Dear Hilda and Nancy,
          Hope everything is going well with you.
20        I will be returning to work this summer at the end of June.  I should be able
          to start working beginning the week of 6/27.
21        I also have a surprising news for all of you.  I am now 4 month pregnant.  I
          plan to work for as long as I can before my due date, which will be around
22        mid-October.

23

24

_____

25        [3]     Although there are two different versions of the Policy in the record, one
     which states that "efforts shall be made to place [the employee] in an available position, and
26   where possible a position that is the same or comparable to the one [he or she] held prior to
     [the] leave," (Tambling Decl., Ex. B), and one which states that "an effort should be made to
27   place the employee in the same or a comparable position to the one held prior to taking
     leave," (DeFronzo Decl., Ex. B), for the reasons set forth in Section C.1, *infra,* the Court
28   does not find that the different versions of the policy to be material to the outcome of this
     motion.

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I miss working with all the great people at Walgreens.  Hope to see you soon.[4]

(Zhang Depo. at 110:3-24, 142:2-143:24; Crone Decl., Exs. E-F; Zhang Decl., ¶ 10.)[5]

Ms. Chung responded the same day: "Congratulations!  I am happy for you!  I am sure you are excited ... Unfortunately at this time I am not able to offer any hours for you in the summer.  If there is a need, I will contact you.  Thank you."  (Crone Decl., Ex. F (elliptical in original).)  On May 16, 2009, Ms. Zhang emailed Ms. Chung and asked if she could work in any other districts and asked whether she would still be able to return to work if her leave was longer than one year.  On May 17, 2009, Ms. Chung responded that Ms. Zhang would need to contact the pharmacy supervisor in the district of her choice, that Ms. Chung thought most districts were staffed and did not need extra help, and that Ms. Zhang would be terminated if she had been on leave for longer than one year.  (*Id.*)

On May 22, 2009, Kimberley Nguyen, to whom Ms. Zhang also sent her May 15, 2009 email, responded:  "Congratulations!  What a surprise!  It's great news to hear.  I am glad that you are planning to be back."  (Crone Decl., Ex. D.)  Ms. Nguyen also stated that "[t]here has been a surplus of pharmacists and tech every where.  We have been asked to take days off so that some relief Rphs can pick up some hours. ... Walgreens not only no longer has shortage but surplus. ... This summer, there will be such a large amount of newly grad pharmacists to join us that even Zeba and I were wondering what is going to happen.  Just want to let you know what is going on.  I think you should be looking for other employment possibilities besides Walgreens."  (*Id.*)

On May 24, 2009, Ms. Zhang emailed her District Manager, Linda DeFronzo ("Ms. DeFronzo").  (DeFronzo Decl., ¶¶ 2, 10, Ex. C; Zhang Decl., ¶ 17, Ex. A.)  Ms. Zhang advised Ms. DeFronzo that her:

---

[4]        The Court has set quoted the emails verbatim.

[5]        Walgreens objects to the last sentence of this paragraph, which states "At the time, I was 41 years old with a high risk pregnancy."  Walgreens' objection is sustained, with respect to Ms. Zhang's statement that her pregnancy was "high risk," and is overruled as to the statement regarding her age.

husband has been assigned working oversea but we do plan to move back in a year or two. I have been coming back to work in Walgreens every summer for the last few years. ... I found out earlier this year that I got pregnant unexpectanly. I was planning to come back to work this summer. Unfortunately, I was informed that there is no hours available for me. I became so disappointed and worried since then I will lose my job and I will be out of medical insurance for prenatal care.

(*Id.*)

Ms. Zhang then posed a series of questions and concluded her mail by stating:

I think you can understand my situation and worries. You know how expensive medical payments would be without insurance. I am pretty desperate about paying for prenatal care and delivery without a job and medical coverage. I was very happy and excited about having a new life, but I didn't expect that I would be out of a job. I am writing to you so that my employment at Walgreens could be continued.

(*Id.*)

On May 26, 2009, Ms. DeFronzo responded to Ms. Zhang's email, answered her questions, and advised Zhang that Walgreens was "not hiring at this time. We are considering hiring full-time permanent positions for certain areas that are of need. If anything changes, Hilda [Chung] will contact you." (*Id.*) Ms. Zhang continued to contact Ms. Chung and Ms. DeFronzo via email regarding the possibility of obtaining shifts. For example, on July 3, 2009, Ms. Zhang emailed Ms. DeFronzo and stated that she noticed "there are plenty of hours posted on market scheduling." (Zhang Decl., Ex. A.) Ms. Zhang also stated

I have always been working as a relief pharmacist for the past few years and often time I worked cross district. I don't understand why I get rejected to work this time while there is actual opening available posted on market scheduling. All that I am looking for is getting to work a minimum of 8 days within 30 day period in order to sustain my employment and my insurance could be back on active status so that I can at least be able to apply for COBRA to get medical coverage.

Under the leave of absence policy, it states: efforts shall be made to place you in an available position, and where possible a position that is the same or comparable position to the one you held prior to your leave. It doesn't seem fair to me to be refused from returning to work while I am available and willing to work.

I am still hoping you will help me by making a reasonable accommodation for my difficult situation. I have put my best effort to accommodate the company's need in the past by working overtime, working graveyard shift and traveling far to different locations and I hope I can continue to contribute if I am allowed to be returned.

4

**United States District Court**
For the Northern District of California

1    (*Id.*)[6]

2         Ms. Zhang also attempted to obtain shifts in the Oakland district, and she contacted

3    Oakland's District Pharmacy Supervisor, Ruth Conroy ("Ms. Conroy").  When Ms. Zhang did

4    not hear from Ms. Conroy, she emailed Ms. Chung to ask for assistance.  (*See, e.g.,* Crone

5    Decl., Ex. F.)

6         On or about July 6, 2009, Ms. DeFronzo and Ms. Chung called Ms. Zhang.  There are

7    some disputes about substance of that conversation.  Ms. Chung and Ms. DeFronzo state that

8    they told Ms. Zhang they did not need another pharmacist in the East Bay and also told her that

9    there was a full-time position available in Modesto.  They contend, however, that they wanted

10   an assurance from Ms. Zhang that she would not take any further *personal* leaves of absence as

11   a condition of offering her that position.  According to Ms. DeFronzo and Ms. Chung, Ms.

12   Zhang said she would need to discuss the matter with her family and get back to them, but Ms.

13   Zhang never contacted them with a decision.  (DeFronzo Decl., ¶¶ 11-14, 16; Chung Decl. ¶¶

14   12-15; Tambling. Decl., Ex. F (Deposition of Linda DeFronzo at 58:1:25).)

15        Ms. Zhang contends that Ms. DeFronzo and Ms. Chung told her about an open position

16   in Modesto.  However, she also contends that they also told her that graduate interns would

17   have priority for that position and that they did not offer her the position.  Ms. Zhang also

18   attests that she asked if she could obtain the Modesto position, if she promised not to take any

19   further personal leave.  (Zhang Depo. at 149:10-154:14; Zhang Decl.,¶¶ 20, 22, 26-28).[7]

20        On July 31, 2009, Zhang filed a complaint with the Department of Fair Employment and

21   Housing.  (Zhang Decl., Ex. E.)  When Zhang did not return to work at Walgreens within

22   twelve months of the date she began her personal leave, September 9, 2008, she was terminated.

23        The Court will address additional specific facts as required in the analysis.

24   //

25   //

26

27        [6]      Ms. De Fronzo apparently forwarded this email to Ms. Chung and asked "[w]hat do you think?"  (*Id.*)  The record does not contain Ms. Chung's response.

28        [7]      Walgreens' objections to paragraph 20, lines 21-24, paragraph 26, lines 19-20, and paragraph 28, lines 15-18, are overruled.

**United States District Court**
For the Northern District of California

**ANALYSIS**

Zhang brings three claims of employment discrimination, in violation of California's Fair Employment and Housing Act ("FEHA"), based on sex, disability, and age (Claims 1, 2 and 6); denial of pregnancy leave, in violation of Government Code § 12945 (Claim 3); failure to accommodate a disability and failure to engage in an interactive process, in violation of FEHA (Claims 4 and 5); wrongful termination (Claim 7); encouraging a FEHA violation (Claim 8); retaliation, in violation of FEHA (Claim 9); violation of California Business and Professions Code § 17200 (Claim 10); breach of contract (Claim 13); and breach of the implied covenant of good faith and fair dealing (Claim 14).

**A.      Legal Standard on Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial, must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A party who moves for summary judgment who does bear the burden of proof at trial, must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary

**United States District Court**
For the Northern District of California

1  judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the Court's task to

2  "scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards v.*

3  *Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the non-moving party fails to make

4  this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at

5  323.

6        An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact

7  finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

8  (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. "In considering

9  a motion for summary judgment, the court may not weigh the evidence or make credibility

10 determinations, and is required to draw all inferences in a light most favorable to the non-

11 moving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

12 **B.     Walgreens Is Entitled To Summary Judgment On The FEHA Claims.**

13       "California has adopted the three stage burden-shifting test established by the United

14 States Supreme Court for trying claims of discrimination" and retaliation. *Guz v. Bechtel Nat'l,*

15 *Inc.*, 24 Cal. 4th 317, 355 (2000) (citing, *inter alia*, *Texas Dept. of Cmmt'y Affairs v. Burdine*,

16 450 U.S. 248 (1981), *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also*

17 *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (retaliation). Under this

18 framework, Ms. Zhang must first establish a prima facie case of discrimination or retaliation.

19 *See Guz*, 24 Cal. 4th at 351-54; *Yanowitz*, 36 Cal. 4th 1028. Whether Ms. Zhang can meet her

20 burden to establish a prima facie case is a matter of law to be determined by the court. *Caldwell*

21 *v. Paramount Unified School District*, 41 Cal. App. 4th 189, 201 (1995).

22       If Ms. Zhang establishes her prima facie case, the burden then shifts to Walgreens to

23 articulate a legitimate, nondiscriminatory reason for its employment decision. Then, in order to

24 prevail, Ms. Zhang must demonstrate that Walgreens' alleged reason for the adverse

25 employment decision was a pretext for another, discriminatory or retaliatory motive. *See Guz*,

26 24 Cal. 4th at 355-56; *see also Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th

27 Cir. 2002).

28 //

**United States District Court**
For the Northern District of California

1      **1.**      **Walgreens is entitled to summary judgment on Ms. Zhang's claim for sex**
2             **discrimination.**

3      It is an unlawful practice for an employer "because of ... sex ... to discriminate against

4 the person in compensation or in terms, conditions or privileges of employment." Cal. Gov.

5 Code § 12940(a). Under FEHA, "'[s]ex' includes, but is not limited to pregnancy, childbirth, or

6 medical conditions related to pregnancy or childbirth." *Id.* § 12926(o); *see also Spaziano v.*

7 *Lucky Stores, Inc.*, 69 Cal. App. 4th 106, 110 (1999) (pregnancy discrimination is a form of sex

8 discrimination). Ms. Zhang may establish a prima facie case of sex discrimination, based on

9 her pregnancy, by demonstrating that (1) she was a member of a protected class, (2) she was

10 performing competently in the position she held, (3) she suffered an adverse employment

11 action, and (4) circumstances exist that suggest Walgreens discriminated against her because of

12 her pregnancy. *See, e.g., Guz*, 24 Cal. 4th at 354-55.

13      It is undisputed that Zhang has satisfied the first three elements of her prima facie case.

14 She was pregnant. There is no evidence in the record that she was not qualified to be a

15 pharmacist or that Walgreens was not satisfied with her performance. Finally, Walgreens did

16 not reinstate when she advised them she wanted to return from personal leave, and it

17 subsequently terminated her. Walgreens argues that Ms. Zhang cannot satisfy the fourth

18 element of her prima facie case, because there is no evidence showing that Walgreens reinstated

19 a non-pregnant employee returning from personal leave in 2009. (*See* Mot. at 15:22-24; Reply

20 at 8:6-10:7.)

21      As the California Supreme Court stated in *Guz*, "the plaintiff's prima facie burden is not

22 onerous," but she "must show actions taken by the employer from which one can infer, if such

23 actions remain unexplained, that it is more likely than not such actions were based on a

24 [prohibited] discriminatory criterion." *Id.* at 355 (internal quotations and citations omitted,

25 brackets in original). Between 2005 and 2008, each time Ms. Zhang advised Walgreens that

26 she intended to return from personal leave, it was able to find her an available position. In

27 contrast, in 2009 when Ms. Zhang announced that she was returning to work *and* was pregnant,

28 Walgreens stated that it did not have a position available. The Court shall assume, for the sake

of argument, that, if unexplained, Walgreens' prior pattern and practice and the timing of Ms. Zhang's announcement, would be sufficient to establish the final element of her prima facie case.

However, Walgreens' actions are not unexplained.  Walgreens proffers that, with the exception of Modesto, California, it had a surplus of pharmacists in the district in which Ms. Zhang normally worked and that it could not accommodate someone who would only be working on a temporary basis.  (*See, e.g.,* DeFronzo Decl., ¶¶ 7-12, 16; Chung Decl., ¶¶ 6-14.) Walgreens also attests it was trying to build customer loyalty in Modesto and, thus, wanted someone who would commit to working full-time.  (DeFronzo Decl., ¶ 11; Chung Decl., ¶ 13.) Walgreens has satisfied its burden to put forth legitimate, non-discriminatory reasons for its actions.  Therefore, the burden shifts back to Ms. Zhang to show that Walgreens' proffered reasons for its actions were a pretext for discrimination.  Ms. Zhang fails to meet her burden.

Although a court can consider the evidence that established a plaintiff's prima facie case, if a plaintiff relies on circumstantial evidence of discrimination, as Ms. Zhang does here, that evidence must be "specific and substantial."  *See, e.g., Wallis v. J.R. Simplot, Co.*, 26 F.3d 885, 890 (9th Cir. 1994); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).[8]  Ms. Zhang relies on printouts of Walgreens' market schedule to support her position that there were open and available positions.  (Zhang Decl., ¶ 20, Ex. B.)  However, the fact that Walgreens may have had open *shifts* at any given time is not "substantial and specific" evidence that it did not have a surplus of pharmacists to take those shifts.

At the hearing on this motion, the parties focused their argument on Walgreens' contention that it did have a position for a temporary employee, which, because of Ms. Zhang's history, is how Ms. DeFronzo and Ms. Chung regarded her.  (*See, e.g.,* DeFronzo Decl., ¶ 10; Chung Decl., ¶ 13.)  "[C]ourts only require that an employer honestly believed its reasons for its actions, even if its reason is foolish or trivial or even baseless."  *Villiarimo, Inc.*, 281 F.3d at 1063.  Ms. Zhang attests that once she discovered she was pregnant, her intent was to return to

---

[8]    "Because of the similarity between state and federal employment discrimination, California courts look to pertinent federal statutes when interpreting [their] own statutes."  *Guz*, 24 Cal. 4th at 354.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  the United States and that her emails to Ms. DeFronzo and Ms. Chung make that clear.  (*See*

2  Zhang Decl., ¶¶ 9-13.)[9]  The correspondence on which she relies does demonstrate that Ms.

3  Zhang was eager and willing to get back to work.  However, Ms. Zhang does not expressly state

4  that she does not intend to return to China, in accordance with her previous employment

5  pattern.[10]  The Court concludes that Ms. Zhang has not put forth specific and substantial

6  evidence from which a reasonable juror could conclude that Walgreens' decision not to reinstate

7  Ms. Zhang upon her return from personal leave was motivated by the fact that she was

8  pregnant.

9          Accordingly, Walgreens is entitled to summary judgment on Ms. Zhang's first claim for

10  relief.

11          **2.      Walgreens is entitled to summary judgment on Ms. Zhang's claims for
                disability discrimination, failure to accommodate, and failure to engage in
12              the interactive process.**

13          It is unlawful for an employer to "refuse to hire or employ [a] person ... or to bar or

14  discharge [a] person from employment ... or to discriminate against [a] person in compensation

15  or in terms, conditions, or privileges of employment" based on a physical disability.  Cal. Gov.

16  Code § 12940(a).  It also is unlawful "[f]or an employer ... to fail to make reasonable

17  accommodation for the known physical ... disability of an applicant or employee."  *Id.* §

18  12940(m).  Finally, it is unlawful "[f]or an employer or other entity covered by this part to fail

19  to engage in a timely, good faith, interactive process with the employee or applicant to

20  determine effective reasonable accommodations, if any, in response to a request for reasonable

21

22

23

24          [9]      Walgreens' objections to these paragraphs are overruled on the basis that they
        do not directly contradict the emails cited, and although the evidence may be relevant, as is
25      set forth in the text, the Court finds that Ms. Zhang's unexpressed intent does not create an
        issue of disputed material fact.
26

27          [10]     Ms. Zhang also conceded that there is no evidence that Ms. Conroy knew she
        was pregnant.  Accordingly, to the extent premises her discrimination claim on the failure to
28      place her in Oakland, there is no evidence in the record to show that Ms. Conroy chose not to
        hire Ms. Zhang because she was pregnant.

1    accommodation by an employee or applicant with a known physical or mental disability or

2    known medical condition." *Id.* § 12940(n).[11]

3          As with her claim for sex discrimination, Zhang premises her claims for disability

4    discrimination, failure to accommodate, and failure to engage in an interactive process, on the

5    fact that she was pregnant.  In order to prevail on any of these claims, Ms. Zhang must

6    demonstrate the was actually disabled or that Walgreens regarded her as disabled.  *See Arteaga*

7    *v. Brinks, Inc.*, 163 Cal. App. 4th 327, 344 (2008); *Jensen v. Wells Fargo Bank*, 85 Cal. App.

8    4th 245, 254-55 (2000).  Ms. Zhang concedes that she is not actually disabled, but argues that

9    Walgreens did regard her as having a disability.  (*See* Opp. Br. at 14:1-3.)  The Court finds this

10   argument unpersuasive.

11         To prevail on this theory, Ms. Zhang must show that Walgreens regarded or treated her

12   as having "any physical condition that makes achievement of a major life activity difficult," or

13   that it regarded her or treated her as having a condition that has no present disabling effect, but

14   that "but may become a physical disability as described in paragraph (1) or (2)."  Cal. Gov.

15   Code § 12926(k)(4)-(5).  However, Ms. Zhang has not proffered any evidence Walgreens

16   determined that the fact that she was pregnant would limit her ability to work *before* she gave

17   birth and took pregnancy related leave, a point she conceded at oral argument.

18         Ms. Zhang has failed to establish that her pregnancy constituted a "physical disability"

19   under FEHA.  *Cf. Parker v. Albertson's, Inc.*, 325 F. Supp. 2d 1239, 1250 (D. Utah 2004)

20   (concluding that defendant was entitled to summary judgment on plaintiff's claim under the

21   ADA, based on her pregnancy, where she failed to allege sufficient facts to show pregnancy

22   limited a major life activity).[12]

23

24         [11]      "Medical condition," is specifically defined under FEHA and the definition
     does not include pregnancy.  *See* Cal. Gov. Code § 12926(h).

25

26         [12]      A number of courts have concluded that pregnancy alone does not qualify as a
     disability.  *See, e.g., Spees v. James Marine, Inc.*, 617 F.3d 380, 396 (6th Cir. 2010) (citing
27   cases); *see also Mayfield v. Trevors Stores, Inc.*, 2004 WL 2806175, at *5-6 (N.D. Cal. Dec.
     6, 2004) (granting motion to dismiss failure to accommodate claim under Government Code
28   § 12940(m), based on fact of pregnancy, where plaintiff failed to "allege which physiological
     functions were impaired by her pregnancy and which major life activities were thus
     impaired").

**United States District Court**
For the Northern District of California

1    Accordingly, the Court concludes that Walgreens is entitled to summary judgment on

2  Zhang's second, fourth and fifth claims for relief.

3       **4.    Walgreens is entitled to summary judgment on Ms. Zhang's claim for age
            discrimination.**
4

5    "It is an unlawful employment practice for an employer to refuse to hire or employ, or to

6  discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground

7  of age, except in cases where the law compels or provides for such action."  Cal. Gov. Code §

8  12941.  Ms. Zhang may establish a prima facie case of age discrimination by demonstrating that

9  (1) she was a member of a protected class, (2) she was performing competently in the position

10 she held, (3) she suffered an adverse employment action, and (4) she was replaced by a

11 substantially younger employee.  *See Guz*, 24 Cal. 4th at 355; *Diaz v. Eagle Produce Ltd.*

12 *P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912,

13 917 (9th Cir. 1996) (noting that in some situations, fourth element has been treated with "some

14 flexibility").[13]

15    It is undisputed that Ms. Zhang was 41 when she told Walgreens she wished to return

16 from personal leave.  Further, as set forth above, there is no evidence in the record that Ms.

17 Zhang had not been performing her duties satisfactorily, and Walgreens does not seriously

18 dispute that Ms. Zhang suffered an adverse employment action.  The case turns on whether Ms.

19 Zhang has met her burden on the fourth element.  The Court concludes she has not.

20    Ms. Zhang's entire argument rests on the assertion that she was told that "graduate

21 interns" might be given priority for any open positions and the *assumption* that these "graduate

22 interns" were younger than her.  However, there is no evidence in the record that provides

23 support for Ms. Zhang's assumption.  Therefore, Ms. Zhang has not established that any

24 graduate intern was "substantially younger" than her.  Nor is there any other evidence in the

25 record to suggest that Walgreens was unwilling to offer her a position because of her age.  In

26 
27    [13]    "Because of the similarity between state and federal employment
discrimination, California courts look to pertinent federal statutes when interpreting [their]
own statutes."  *Guz*, 24 Cal. 4th at 354.  Although courts have determined that the fourth
28 element may be applied flexibly in cases where an employer engaged in a general reduction
in force, this is not such a case.  *See, e.g., Diaz*, 521 F.3d at 1207 n.2.

1   addition, for the reasons set forth above, the Court concludes that, even if Ms. Zhang could

2   establish her prima facie case, Ms. Zhang fails to put forth specific and substantial evidence that

3   Walgreens' reasons for not reinstating her are a pretext for age discrimination.

4          Accordingly, Walgreens is entitled to summary judgment on Ms. Zhang's sixth claim for

5   relief.

6          **4.     Walgreens is entitled to summary judgment on Ms. Zhang's claim for
               retaliation.**

7

8          It is unlawful "[f]or any employer, labor organization, employment agency, or person to

9   discharge, expel, or otherwise discriminate against any person because the person has opposed

10  any practices forbidden under this part or because the person has filed a complaint, testified, or

11  assisted in any proceeding under this part."  Cal. Gov. Code § 12940(h).  To establish a prima

12  facie case of retaliation, Ms. Zhang must show "(1) ... she engaged in a 'protected activity,' (2)

13  the employer subjected the employee to an adverse employment action, and (3) a causal link

14  existed between the protected activity and the employer's action."  *Yanowitz*, 36 Cal. 4th at

15  1042.

16         Ms. Zhang alleges she complained to Walgreens about its discriminatory treatment.  The

17  only evidence in the record of these alleged complaints is Ms. Zhang's July 3, 2009 email to

18  Ms. DeFronzo, in which she says she does not understand why she got rejected when she asked

19  to return from personal leave and that it did not seem fair to her that Walgreens refused to let

20  her come back when she was willing and available to work.  (Zhang Decl., Ex. B.)  However,

21  Ms. Zhang does not say that she believes Walgreens was discriminating against her.  Although

22  informal complaints of discrimination may qualify as a protected activity, the Court concludes

23  the July 3, 2009 email would not satisfy the first element of Ms. Zhang's prima facie case.

24  Even if it could, however, Ms. Zhang made this complaint well after Ms. Chung had advised

25  her that there were no positions available.  Further, the record contains no evidence that Ms.

26  DeFronzo or Ms. Chung changed their minds about finding a place for Ms. Zhang because of

27  this email.  As such, the Court concludes that Ms. Zhang cannot establish a prima facie case of

28  retaliation based on this informal complaint.

1    Ms. Zhang also relies on the fact that she filed a complaint Department of Fair

2    Employment and Housing ("DFEH"), which does qualify as a protected activity.  The Court

3    concludes that Ms. Zhang fails to state a retaliation claim based on her complaint to the DFEH,

4    because she filed that complaint *after* her request for reinstatement had been denied.  Further,

5    Walgreens explains that Ms. Zhang was formally terminated because she did not return from

6    personal leave within twelve months of the date her leave commenced.  Ms. Zhang offers no

7    evidence to rebut this explanation and that would suggest that Walgreens true motivation for

8    terminating her was because she filed a complaint with DFEH.

9    Accordingly, Walgreens is entitled to summary judgment on Ms. Zhang's ninth claim

10    for relief.[14]

11   **C.    Walgreens Is Entitled To Summary Judgment On Ms. Zhang's Contract Claims.**

12        **1.    Walgreens is entitled to summary judgment on the breach of contract claim.**

13    Walgreens moves for summary judgment on the basis that Zhang was an at-will

14    employee.  Pursuant to California Labor Code § 2922, "[a]n employment, having no specified

15    term, may be terminated at the will of either party on notice to the other."  Zhang concedes that

16    she was an at-will employee.  (*See* Opp. Br. at 17:1.)

17    In her Complaint, Zhang alleges that she "and Walgreens entered into an employment

18    agreement contract for an indefinite duration," and that Walgreens "breached [its] agreement

19    with Plaintiff by subjecting Plaintiff to arbitrary and unfair conduct and wrongfully terminating

20    her in violation of the FEHA."  (Compl., ¶¶ 97, 99.)[15]  However, in opposition to the motion for

21    summary judgment, Ms. Zhang also argues that Walgreens breached its Personal Leave Policy

22

23    _____

24    [14]    Because the Court has concluded that Ms. Zhang has failed to state any claim
based on alleged violations of FEHA, her claims for wrongful termination, failure to prevent
a violation of FEHA, and for violations of Section 17200 also must fail.  Accordingly,

25    Walgreens also is entitled to summary judgment on Ms. Zhang's seventh, eighth and tenth
claims for relief.

26

27    [15]    Zhang also argues that "at-will employees cannot be terminated for illegal
purposes," and contends that because her "pregnancy and maternity leave played a decisive

28    role in her supervisors' decision not to reinstate her," Walgreens breached its contract with
her.  (Opp. Br. at 17:2-4.)  For the reasons set forth above, Ms. Zhang cannot state a contract
claim based on this theory of liability.

United States District Court
For the Northern District of California

1   by failing to make efforts to place her in an available position, *i.e.,* that the Policy created an

2   implied contract of continued employment. (*See* Opp. Br. at 15:24-16:2, 16:24-18:1.)

3       It is true that, in some circumstances, "employer's personnel policies and practices may

4   become *implied-in-fact terms* of the contract between employer and employee.  If that has

5   occurred, the employer's failure to follow such policies ... is a breach of the contract...."  *Guz*,

6   24 Cal. 4th at 352 (emphasis in original).  On the facts of this case, the Court finds Ms. Zhang's

7   theory untenable.

8       Ms. Zhang acknowledged that, *if hired,* she understood and certified that her

9   "employment with Walgreens is for no definite period and may be terminated at any time, with

10  or without cause, and without any previous notice, at the option of Walgreens or me."  (De

11  Fronzo Decl., Ex. A.)  She also acknowledged that she understood that no employee, manager

12  or other agent or representative of Walgreens, other than its Chief Executive Officer, has any

13  authority to enter into any agreement or amendment contrary to the foregoing."  (*Id.*)  Finally,

14  Ms. Zhang testified that no one at Walgreens made any representations contradicting the at-will

15  provision in her employment application.  (Zhang Depo. at 25:3-26:5.)

16      In light of Ms. Zhang's concession that she was an at-will employee and her testimony

17  that she never received any promises to the contrary, the Court concludes that the employment

18  application was intended by the parties to be an integrated agreement regarding the at-will

19  nature of their relationship.  *See, e.g., Slivinksy v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799,

20  804-06 (1988).  "'There cannot be a valid express contract and an implied contract, each

21  embracing the same subject, but requiring different results.'"  *Camp v. Jeffer, Mangesl, Butler*

22  *& Marmaro*, 35 Cal. App. 4th 620, 630 (1996) (quoting *Shapiro v. Wells Fargo Realty Advisors*

23  152 Cal. App.3d 467, 482 (1984), *criticized on other grounds in Foley v. Interactive Data*

24  *Corp.*, 47 Cal. 3d 654, 688 (1988)); *see also Tomlinson v. Qualcomm, Inc.*, 97 Cal. App. 4th

25  934, 945 (2002).

26      In *Tomlinson*, the defendant laid plaintiff off, while she was on family leave, as part of a

27  reduction in force.  97 Cal. App. 4th at 937, 939.  The plaintiff argued that the defendant's

28  family leave policy created an "implied-in-fact agreement of continued employment," which the

United States District Court

For the Northern District of California

1    defendant breached when it failed to reinstate her at the end of her leave. *Id.* at 943-44. The

2    plaintiff argued that this implied agreement did not embrace the same subject as her express at-

3    will employment agreement, because "the express agreement deals only with employment

4    termination and the implied agreement addresses reinstatement after leave." *Id.* at 945. The

5    court disagreed and found that "because both address [the defendant's] obligation, if any, to

6    continue employing [the plaintiff] during and after the family leave ... both embrace the same

7    subject." *Id.*

8         Here, as in *Tomlinson*, the provision of the Policy on which Ms. Zhang relies and her at-

9    will agreement both address Walgreens' purported obligations to continue to employ her during

10   and after her personal leave. Because there cannot be an express agreement and an implied

11   agreement that embrace the same subject, but require different results, Ms. Zhang's breach of

12   contract claim fails.

13        Accordingly, Walgreens is entitled to summary judgment on Ms. Zhang's thirteenth

14   claim for relief.

15        **2.    Walgreens is entitled to summary judgment on the claim for breach of the
              implied covenant of good faith and fair dealing.**

16

17        Zhang's claim for breach of the implied covenant of good faith and fair dealing is based

18   upon the same facts of her breach of contract claim. To the extent Zhang attempts to impose

19   limits on Walgreens' rights to terminate her "*beyond* those to which the parties' actually

20   agreed," Zhang's claim is invalid. *Guz*, 24 Cal. 4th at 352 (emphasis in original). To the extent

21   Walgreens' conduct is "directly actionable as a breach of an implied-in-fact contract term,"

22   Zhang's claim is superfluous. *Id.* Finally, "[i]n the employment context, an implied covenant

23   theory affords no separate *measure of recovery*, such as tort damages. ... Allegations that the

24   breach was wrongful, in bad faith, arbitrary, and unfair are unavailable; there is no tort of 'bad

25   faith breach' of an employment contract." *Id.* (emphasis in original, citations omitted).

26        Accordingly, for each of the foregoing reasons, Walgreens is entitled to summary

27   judgment on Ms. Zhang's fourteenth claim for relief.

28   //

1

## CONCLUSION

2        For the reasons set forth in this Order, Walgreens' motion for summary judgment is

3    GRANTED.  A separate judgment shall issue, and the Clerk is directed to close the file.

4        **IT IS SO ORDERED.**

5

6    Dated: November 29, 2010

7                                                    JEFFREY S. WHITE
                                                     UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

17